Mr. Justice Smith
delivered the opinion of the court; which contains all the facts arising in the cause, necessary to be stated.
In the case before us, the first question which we deem proper to examine arises upon the demurrer of Gayden, the defendant below, to those parts of complainants’ bill which seek to make him liable, as he alleges in his demurrer, upon his bonds as guardian of three of the minor children of Wily Collins, deceased; and also as security of Penny Collins upon his administration bond.
Gayden, who is one of the securities of the administratrix of Collins’s estate, shortly after the grant of letters intermarried with her; and thus became possessed, as administrator in right of his wife, of the whole property of the deceased.
In 1813, as it appears from the statements of the bill, certain persons who assumed to act, hy virtue of an order of the orphans’ court of Wilkinson county, affected to make a division of the personal property of the estate of Collins, which still continued unad-ministered in the hands of the administrator.
*366 By this division the whole proprety was distributed into five parts; one of which, amounting in value to one third of the whole, was set aside to Gayden, who claimed the same in right of his wife.
The remaining four parts were assigned to the four surviving children of the deceased. But anterior to the event the county of Amite had been formed, which contained the property and the residence of all of the parties. The property had in fact been located and all of the parties had continually resided at the same place, from the date of the grant of administration.
In the year following Gayden became by the appointment of the orphans’ court of Amite county guardian of Mahala Collins, now the wife of Francis Wren; of Abatha Collins, the wife of the complainant Shropshire, and of James L. Collins, who died in the year 1824, unmarried and without issue, and executed bond as guardian of each separately.
It appears that the whole of the property which had been divided, as before recited, remained hi the possession and subject to the control of Gayden down to 1816, when he delivered to John Collins the share previously set apart for him at the division; and that in the years 1819 and 1832, he delivered two more of the shares.
It further appears that the share, as before ascertained, of James L. Collins was delivered to him: but at what period it is not stated.
The complainants, in their bill, charge fraud and wilful neglect, on the part of Gayden, in the discharge of his duties as administrator; and pray that he may be compelled to account as well as guardian of the parties before mentioned, as administrator of Wiley Collins’s estate.
From this rehearsal in part of the facts stated in the bill, it is obvious, that so far as Gayden is sought to be charged in his character of guardian, there is no privity of interest between the complainants, or legal dependence between the claims sought to be enforced.
For Gaydon having executed separate guardian bonds, he cannot be held responsible to the wards jointly. His liabilities as *367 guardian to a portion of the complainants are separate and independent, and most obviously so when pursued in the double capacity of guardian and administrator. A bill cannot join a demand for a debt due by an individual as an executor with one for a debt due by the same individual in his private character. 4 Johns. Chan. Rep. 204. It is a well understood general rule, that courts of equity, as well as courts of law, will not take cog-nisance of distinct and separate claims or liabilities of different persons in one suit; and this, though they stand in the same relative situation. '
In the case under consideration, the relation of guardian and ward does not subsist between the appellee and all of the persons joined as complainants in the bill. The demurrer, therefore, should have been sustained, at least to some extent. A further examination into the allegations and prayer of the bill will enable us to find the extent.
The demurrer is applied to so much of the bill “ as seeks to make the defendant liable on his bond, as security of Penny Collins, and to such facts of the bill as seek to make him liable on his guardian bonds, and to Mahala Wren for the negro girl Miriam. -
The demurrer was drafted under a misconception of the allegation and prayer of the bill. ' Relief is not prayed against the defendant as security on the administration bond. He is held in the capacity of administrator, having acquired that character, and the possession and control of the intestate’s estate by marriage. Nor can it be said that this suit is founded upon any of the bonds in question, although they may constitute the evidence of the relation between the parties, and form inducements to the action. In an action on the bond, the verdict would be for damages alone; the specific property is sought in this proceeding. There appears also to be a misconception as to that part of the bill in relation to the slave Miriam; for there is no prayer to charge the defendant in respect to her. Separate property is asserted on the part of Mahala, to this negro, and it is charged as an act of bad faith in Gayden to have incorporated her with the *368 distributive property of the deceased, as it is alleged he knew of the existence of her claim.
If a separate right exists on the part of this complainant, her remedy must be in another form.
It appears probable that this incident could only have been introduced to give color to the charge of bad faith. The prayer of discovery in regard to Miriam is foreign to the bill.
From this view of the subject, the demurrer must be held to apply, (and so far sustainable,) to those portions of the bill which seek discovery in regard to Miriam, and which seek to make the appellee liable on his guardian bonds. The chancellor should have dismissed the bill thus far.
The questions arising upon the defendant’s plea of the nature of limitations, as applicable to the state of facts disclosed by the bill, are attended with some embarrassments, surrounded as they are with difficulty, are involved in uncertainly.
The relation which subsisted between the parties, complainant and defendant, is obviously of a trust character, and though direct in its nature, cannot be said exactly to conform to the incidents of a purely technical trust, which is a dictum of a court of equity, and is in nowise to be affected by the statute of limitations. And it is contended that, as this trust is not purely of a technical character, the allegations of the bill show a state of facts which must make the statute applicable as a rule of decision in this court.
It appears from the bill that letters of administration were granted to Mrs. Collins, the widow of the intestate, by the orphans’ court of Wilkinson county, in the latter part of the year 1814, and that the appellee shortly afterwards intermarried with her; thus acquiring the right of administrator of the estate, and to the possession of the intestate’s personal effects; the whole of which went into his possession. No account was rendered, or settlement made with the court having cognisance of the matter by the administratrix, anterior to her marriage with Gayden, or subsequently by Gayden and wife, or either of them. It is also apparent that no bond, partition or distribution of the estate, among the distributees, was ever made; and it is expressly stated *369 in; complainant’s bill, that Gayden, by his marriage with the administratrix, and by virtue of the division before adverted to, claimed title to the following slaves, to wit: Plain, Betty, Caroline, Frank, Mary and Sal; these slaves, constituting, together with a feather bed, chest and trunk, the distributive portion assigned to him and wife at that division. It is insisted that the relation of trustee and cestui que trust was dissolved by the event above recited; that from that time Gayden claimed the property so set apart to him and wife in his own right, and consequently held adversely to any right, which the distributees of Collins may have asserted to the same property; and that as the relation which had subsisted between the parties was not of a purely technical nature, and a court of law having concurrent jurisdiction of the subject matter litigated in this suit, the statute of limitations should be held to bar the recovery sought.
■ It is admitted that some of the incidents inherent in the origin of trusts of a purely technical'character, do not attend the inception of the relation between the administrator and' the dis-tributees of his intestate’s estate. Yet this reasoning must be considered unsatisfactory, if upon inquiry it shall be found that the trust continues to subsist between the administrator and dis-tributees, in a case where he has not discharged himself of his trust duties by fully administering the eifects of his intestate, and if there shall not exist at law a remedy effective to subserve the ends of justice. For it appears to be well settled that courts of equity, where there is a complete legal remedy, and an equitable method of redress with respect to the same subject matter, will apply the same statute bar in the latter which courts of law ought to interpose in the former. 2 Atkyns, 240; Kane v. Bloodgood, 7 Johns. Chan. Rep. 90; Angel on Limitations, 132.
. The right which courts of equity assume of enforcing the performance of the duties of executors and administrators, constitutes a portion of their original jurisdiction; and it cannot be doiibted, that if the statute should not bar a recovery in this case, it is one cognisable in this court. The true ground of jurisdiction here, is the trust existing between the parties.
*370 ' Administrators are trustees appointed by the law for the purpose of paying the debts of intestates, and of making distribution; their very office is a trust. 1 P. Williams, 249. 572. The statute of distributions, say the books, was intended as the will of the intestate; and the succession to the personal estate is as much fixed as the right of the heir to the real estate at common law, and on the ground of the trust in the administrator, chancery assumed the power of compelling distribution, &c. Decouche v. Savetier, 3 Johns. Chan. Rep. 217.
By the statute of this state, Revised Code, p. 44, sec. 56, it is provided, that the bond of an administrator may be put in suit by any party injured by a breach of its condition; and that it shall not become void upon the first recovery, but may be prosecuted from time to time, until the whole amount of the property shall be recovered. The appellants have, therefore, by express statutory provision, á legal remedy upon the bond for any dereliction of duty on the part of Gayden. But it remains to be seen whether the remedy thus offered at law, is sufficiently ample to subserve the 'ends of justice.
It would appear to be a rule plainly' deducible from the principle of adjudicated cases, and sustained by the clearest convictions of reason, that when the remedy at law is uncertain and incomplete, courts of equity should not adopt the statute as a rule of decision, though it would be held applicable in a suit at law for the same subject matter.
In the case before us, the' estate was never finally settled; in fact, no account was ever rendered by the administrator, and of consequence no valid partition or distribution could have been made binding upon the distributees — while minors, they could not have maintained an action of account against Gayden; and it is equally manifest, that he could not have been pushed in an action of detinue while the estate remained undivided and unsettled. Nor could either of the parties claiming distribution have maintained an action On the bond for his respective distributive share.' The only proceeding, then, which they could have instituted at law, was an action on the bond, for a breach of the condition, in *371 which damages co-extensive with the penalty could alone have been recovered.
Was this remedy complete? could it be said thatfull justice was attainable through that channel?
The complainants pray to be placed in possession of the slaves, and other property of their deceased ancestor which had come into the hands of Gayden; and it will readily be conceived, that many circumstances might concur to give property of the former description a value in the eyes of the distributees, which could not be estimated by a jury. It is not contended, that such a conclusion necessarily arises out of the facts disclosed by the bill: nor would its assumption alone be sufficient to warrant this court in deciding the remedy at law to be incomplete. But other considerations tend strongly to this conclusion.
It was the'duty of the probate judge to direct that the penalty of the bond should be sufficient to cover the full value of the estate; and it is presumed, that this was done so far as the value of the estate was known to the judge at the period of the grant of letters. But it does not follow that the penalty of the bond, though sufficiently large at the date of the execution, was so nine years afterwards, at the division before adverted to; especially when it is borné in mind that during this intervening time, the whole property was possessed, and its entire proceeds appropriated by Gayden to his own purposes, and that it is alleged that Gayden stands indebted as administrator in the sum of 26,000 dollars more than the penalty of the administration bond.
To this allegation some color is given by the proofs taken, before the commissioner; and although there is no conclusive evidence that the penalty is inadequate; yet on the other hand, the presumption is much weaker that the full amount of the penalty is adequate to cover the demands of the complainants. In the opinion of this court it is, therefore, not certain that the appellants have a complete remedy at law.
But assuming it as a general rule, that when a remedy is given at law in respect to a subject of litigation over which a court of chancery has primary jurisdiction, that the same limitation will be applied in equity which would bar at law, yet it is contended *372 that the circumstances of this case bring it within the circle of those cases which have been held without the statute of limitations. The trust between the parties to this suit was express and direct, and is clearly distinguishable from those cases of trust which depend upon evidence or arise by implication of law. The rule in reference to this latter class of trusts is understood to' be well settled. Courts of equity have invariably in these cases adopted the statute as a rule of decision, by analogy to-courts of law, and will refuse their aid where the legal remedy has been barred. But in relation to express and direct trusts, as affected by the statute, the rule does not appear to be so clearly defined or satisfactorily settled; it is, however, clear, that so long as there is a direct subsisting trust, in a suit between the trustee and cestuique trust, the statute will not attach.
It is contended, and high authority is ádvanced in support of the proposition, that even in cases of technical and direct trusts, where the trustee denies the right of cestuique trust, and assumes absolute ownership over the trust property, the latter should not. be allowed a remedy in equity beyond the period final for the recovery of legal estates at law; Angel on Limitations, 136; and in the case of Kane v. Bloodgood, 7 Johns. Chan. Rep. 124, the same doctrine is recognised. So long, says the learned chancellor who decided that case, “ as the trust is a subsisting one and admitted by the acts and declaration of the parties, no doubt the statute does not apply; but when mere transactions take place between the trustees and cestuique trust as would in the case of tenants in common, amount to an ouster of one of them by the other, I can hardly suppose that courts of chancery would consider lapse of time as of no consequence.”
This position of Chancellor Kent, and which has been subsequently recognised by Mr. Angel in his treatise on Limitations, p. 136, as sound doctrine, is not stated as a final rule- of law sustained by authority; but appears to be a deduction of his own, drawn from the application of the statute to cases between tenants in common. :
The case which the learned chancellor was there investigating, did not require the annunciation of this doctrine, nor is it appa *373 rent that the analogy which exists between tenants in common, and a trustee and his cestuique trust, is sufficiently perfect to warrant such a conclusion; at least in the unqualified manner in which it is stated. There is, unquestionably, a material trust between tenants in common; but it is not direct or express in its character. Each is seised in his own right of the whole estate, and the tenant in possession, so long as he does not hold adversely to Ms-co-tenant, is construed to be a trustee for the other — the possession, of one is construed to be the possession of both. But in the case: of a direct and express trust, the trustee comes into possession originally in that character. In the case before us, Gayden took, possession of the effects of Collins as trustee for those entitled to the succession.
' It would probably be injustice to Chancellor Kent to suppose,, that ho intended to lay it down as a general rule, that in all cases of direct and technical trusts, where the trustee denies the right of his cestuique trust, and assumes absolute ownership, the statute-should be held invariably to attach. But upon this foundation alone, has Mr. Angel rested the validity of this principle. So far as I have been enabled to extend my researches, I have not found-one adjudicated case, where this doctrine is fully established. In.fact, the very definition of a technical trust, appears to militate agaiust the truth of this doctrine.- Lord Hardwicke, in Sturt v. Mellish, 2 Atkyns, 610, says, “a trust is where there is such a confidence between the parties that no action at law will lie; but is. merely a case for the consideration of a court of equity.” And in the case of Lockey v. Lockey, Prec. in Chan. 518, a technical-trust is described to be a mere “creature of a court of equity,”' and not at all cognisable in a court of law.
If it be true that a trust of this-character is not cognisable in a. court of law, but is a question which could only be entertained in equity, how is it possible for the latter to adopt by analogy any purely legal bar? The learned chancellor himself, in a former-part of his opinion in the case of Kane v. Bloodgood, holds language irreconcileable with the principle, taken in the extended sense in which Mr. Angel has adopted it. He says, “ a review, of former decisions will enable us, as I apprehend, to establish, *374 upon the solid foundation of authority and policy, this rule; that the trusts intended by a court of equity, not to be reached or affected by the statute of limitations, are those technical and continuing trusts, which are not at all cognisable in a court of law, but fall within the proper, peculiar, and exclusive jurisdiction of a court of equity.” This position, I apprehend, cannot be correct, if the rule laid down by Angel is true. It cannot be true, that a trust falling within the proper, peculiar and exclusive jurisdiction of a court of equity, should be unaffected by the statute, and yet brought within its operation, by a denial of the right of the cestui-que trust. The statute of limitations does not apply in terms to any equitable demand; Stackhouse v. Barnston, 10 Vesey, 453. Yet it is acknowledged, that equity takes the same limitation in cases that are analogous to those in which it applies at law; but this application, it is obvious, cannot be made to those cases which lie within the exclusive jurisdiction of courts of equity, because there is no point of analogy. The test, therefore, in Angel, ought not to be considered authority, resting. as it does, solely on the dictum of Chancellor Kent.
After the most mature deliberation, which under the circumstances we have been enabled to bestow upon this difficult and intricate question, we have come to this conclusion; that all cases of trust, where first, the trust is direct and express in its character; secondly, where the trust is direct, and technical and cognisable only in a court of equity; and thirdly, where the right is litigable between the trustee and cestuique trust, are not within the statute of limitations. It is also a well settled rule, that where the trust subsists, being a direct one, the statute will not be adopted in equity as a rule of decision, although a concurrent remedy may exist at law. Cholmondely v. Clinton, 2 Mer. 360; 7 Johns. Chan. Rep. 123.
In England, the statute does not apply in suits in equity for the recovery of legacies and distributive shares, for the reason that no remedy exists at law; but it becomes a matter of serious question, whether we are not bound to modify this rule in consequence of there having been a remedy provided at law in this state.
Over the subject of executors and administrators equity pos *375 sessed original and inclusive jurisdiction; and it is contended, that as the remedy given at law for the enforcement of their dutiesr is cumulative, equity ought not to apply the statute bar which would attach in a suit at law against them.' And it would appear that ¶ this view of the question has been adopted in the state of New York. In the case of Arden v. Arden, 1 Johns. Chan. Rep. 316, it was held there was no legal bar, by the form of the statute of limitations, to a legacy. In the case of Decouche v. Savetier, 3 Johns. Chan. Rep. 216, the same doctrine is expressly recognised.
The learned chancellor says, “ The executor, though he may plead the statute as against a creditor, can never plead the statute as a bar to ’a- legacy.” And by parity of reasoning it would not be applicable in a suit for a distributive share.
In the state of South Carolina the same doctrine has been maintained; 4 Dessausure’s Rep. 432. It was decided that the statute did not apply in a suit in equity against the executor for a legacy. This case is a very strong one, for the suit was not instituted until after final settlement of the estate, and delivery to the heirs. If these' decisions are maintainable on the principles of reason and authority, the objection to the application of the statute in a suit against the administrator of an unsettled estate, must be decided by them.
It is said, that it cannot be known when the executor is bound to pay the legacies, as they are payable when the executor shall have possessed assets sufficient to pay the debts, which may be at an indefinite period, and that, therefore, no time can be fixed at which the statute will commence to, run. If this be the true reason of the rule in relation to legacies, it must apply with full force in a suit brought in equity for the purpose of compelling an administrator to account and pay over the estate to those entitled to it; for the obvious reason, that the distributee could not at law have his action for a distributive share, until after settlement, although he might maintain an action on the administration bond for breach of the condition.
• In the case of an unsettled administration, the trust remains unexecuted, and must, therefore, we apprehend be regarded as *376 subsisting between the trustee and cestuique trust, and can alone be put an end to, as between them, by bona fide execution of the trust. But if the trust subsist no doubt can exist that the statute will not attach.
In the case before us, Gayden came into the possession of the estate of the deceased, as administrator, by virtue of his marriage with the administratrix. He was, therefore, the trustee for those entitled to the succession. His office was a trust, and he could take in no other capacity. He failed wholly to discharge the duties which the law had imposed upon him in that character. He did not even render an account, or settle in any respect with the orphans’ court, and of consequence there could not have been a legal distribution of the estate.
If Gayden had any right to a part of the estate which he held as administrator, it was a joint interest with the other distributees, and did not authorise him to assume a distinct and separate title to any specific chattel or separate portion of the trust fund. The case would have presented a different aspect, had there been a decree setting apart to him the distributive share to which his wife may have been entitled; for as to the part thus decreed to him, he would have held, not as trustee, but in his individual character. The trust relation, so far, would have ceased to exist. But by his own act, or rather by a gross neglect of duty, injurious to his cestuique trust and beneficial to himself, he has placed the complainants in such a situation, that it is at least very doubtful whether, in a suit at law, full and complete justice could be obtained; and now asks of this court, that these very acts, performed in violation of duty, should be held to entitle him to the benefit of the statute of limitations. To us it would appear an unwarrantable extension of the rule, and a violation of the dictates of natural equity, to permit an individual avIio has taken possession of property as administrator, by claiming it as his own, to destroy his trust character, and then to urge his own wrong act as a reason why the statute should be interposed in his defence.
• In this case, then, the trust remaining unexecuted, we are bound to regard it as coming within the principle of those cases *377 to which the statute does not attach; and consequently, that the plea should have been overruled, and the defendant required to answer. Several points were raised in the argument of this case, and discussed Avith great ability, but' as they depended upon the question whether the statute applied or not, it has become unnecessary to examine into them.
The decree of the chancellor must be reversed, and the cause remanded.